NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
GREGORY W. STAPLES (Cal. Bar No. 155505)
Assistant United States Attorney
     United States Courthouse
     411 West Fourth Street
     Santa Ana, California 92701
     Telephone: (714) 338-3535
     Facsimile: (714) 338-3523
     E-mail:    greg.staples@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SACR 16-107-CJC |
|---|---|
| Plaintiff, | **GOVERNMENT'S SENTENCING POSITION** |
| v. | |
| SHAWN P. WATKINS, | Date: 2/11/19<br>Time: 10:00 a.m. |
| Defendant. | |

The government submits its sentencing position.

January 29, 2019          /s/
DATE                   GREGORY W. STAPLES
                        Assistant U.S. Attorney

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.   INTRODUCTION**

The government has no objections to the findings of the PSR, the Guidelines calculations, or recommendations of Probation.  For the reasons set forth below, the Court should impose a sentence of 41 months in custody, restitution in the amount of $2,942,718.44, and the other terms and conditions recommended by Probation.

**II.   BACKGROUND**

Defendant is before the Court after pleading guilty to one count of mail fraud.  In his plea agreement, defendant stipulated to the following facts:

> From at least 2007 through at least October 2013, in Orange County, in the Central District of California and elsewhere, defendant and Angel Bronsgeest doing business as Investors Workshops, Inc. and The Equity Growth Group, Inc. ("TEGG"), knowingly participated in a plan for obtaining money for property in connection with the offering of investments in real estate.  Starting in and about 2010, defendant and Bronsgeest knowingly made false promises or statements to obtain money for property in connection with the offering of investments in real estate.  Defendant and Bronsgeest conducted monthly seminars for Investors Workshops in which attendees were informed on how to invest in real estate.  Attendees were told that TEGG acquired properties or took over payments from homeowners who wanted out of their properties and held the properties long term to generate rental income.  Defendant told attendees that TEGG was acquiring properties and had a positive cash flow on properties that it owned or controlled.  Attendees of the workshops were

1  given the opportunity to become investors in TEGG.  These

2  investors were told that their loans to or investments in TEGG

3  would be secured by deeds of trust on properties TEGG owned.

4  Prospective investors were told that their money would be used

5  to acquire properties, and in some cases repair properties when

6  needed.  Some investors were asked to provide "bridge loans" to

7  allow TEGG to acquire certain properties when money from another

8  investor had not yet been received.  In fact, since the

9  beginning of defendant's involvement with TEGG, TEGG had a

10  negative cash flow and since 2011 was no longer acquiring

11  properties.  Instead, money from investors was used to pay other

12  investors, and to pay salaries for staff (including defendant

13  and Bronsgeest) and other expenses of TEGG and mortgages on

14  three houses owned by TEGG which were being occupied by

15  defendant, his parents, and his estranged wife and children.  In

16  addition, in many cases deeds of trust were not recorded to

17  secure investors' money, or multiple deeds of trust were filed

18  on single properties in excess of the value of the properties.

19  In furtherance of this scheme, on or about April 9, 2012,

20  defendant caused the mailing of check no. 2003 in the amount of

21  $77,000 from TEGG to American Estate & Trust for the benefit of

22  victim W.L.  In committing the above-stated acts, defendant knew

23  or should have known that money sent to victim W.L. was money

24  invested by new victims.

25

26 Plea Agreement ¶ 10.  Under the plea agreement, the parties are free

27 to argue for additional offense characteristics, adjustments, and

28

3

departures, and to argue for a sentence outside the applicable Guidelines' range.

**III.   ADVISORY GUIDELINES CALCULATIONS**

Probation and the parties agree that the following sentencing calculations apply:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense Characteristics | | |
| Loss > $1.5 million: | 16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| More than 10 victims: | 2 | U.S.S.G. § 2B1.1(2)(A) |

The total offense level following a 3-level reduction for acceptance of responsibility is 22.  Defendant is in criminal history category I.  The resulting sentencing range is 41-51 months.  Per the plea agreement, the government recommends a low-end sentence of 41 months.

**IV.   SECTION 3553 FACTORS**

The government agrees with Probation that a sentence of 41 months is needed to address the seriousness of the offense in a case where victims lost nearly $3 million.  The victims in this case were individual investors for whom the losses had significant impacts.  A sentence of 41 months promotes respect for the law and should help deter this defendant and others.  A low-end sentence would also avoid sentencing disparities with other similarly situated defendants.

**V.   CONCLUSION**

For the foregoing reasons, the Court should impose a sentence of 41 months in custody, restitution in the amount of $2,942,718.44,

1    three years of supervised release, and the other conditions

2    recommended by Probation.